1  Richard A. Sipos (Bar No. 126982)
   Garret D. Murai (Bar No. 215667)
2  **WENDEL, ROSEN, BLACK & DEAN LLP**
   1111 Broadway, 24th Floor
3  Post Office Box 2047
   Oakland, CA  94607-4036
4  Telephone:  (510) 834-6600
   Facsimile:  (510) 834-1928
5  E-mail: rsipos@wendel.com

6  Joseph P. McMonigle (Bar No. 66811)
   **LONG & LEVIT LLP**
7  465 California Street, 5th Floor
   San Francisco, CA  94104
8  Telephone: (415) 397-2222
   Facsimile: (415) 397-6392
9  Email: jmcmonigle@longlevit.com

10 Attorneys for Plaintiff
   RICHARD TRAVERSO
11

12                UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16 RICHARD TRAVERSO,                    Case No. C07-3629 MJJ

17          Plaintiff,                  **[DISCOVERY MATTER]**

18     vs.                              **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF**
19 CLEAR CHANNEL OUTDOOR, INC.; and     **MOTION TO COMPEL FURTHER
   DOES 1 through 10, inclusive,        RESPONSES TO WRITTEN DISCOVERY
20                                       AND TO COMPEL THE DEPOSITIONS
          Defendants.                   OF WILLIAM HOOPER AND PATRICK
21                                       POWERS**

22                                       **Date:        March 18, 2008**
                                         **Time:        9:30 a.m.**
23                                       **Courtroom:   11 (19th Floor)**
                                         **Judge:       Hon. Martin J. Jenkins**
24
                                         Action Removed:  July 13, 2007
25                                       Trial Date:      April 7, 2008

26

27

28

   *MEMORANDUM OF POINTS AND AUTHORITIES –
   Case No. C07-3629 MJJ*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1    Plaintiff RICHARD TRAVERSO respectfully submits the following Memorandum of

2  Points and Authorities:

3  **I.    INTRODUCTION**

4    This is an unlawful detainer action following termination of a commercial land lease

5  ("Lease") to operate a billboard, located at 650-660 Bryant Street, on the Skyway in San

6  Francisco ("Billboard").  The Skyway runs from the Bay Bridge to the Central Freeway, along

7  Interstate 80, in San Francisco ("Skyway").  As far as billboards go, the Skyway is one of the

8  premiere locations in the world.  Advertisers pay astronomical sums to advertise on Skyway

9  billboards.

10    Plaintiff RICHARD TRAVERSO ("Plaintiff or Traverso") was the lessor under the Lease.

11  Defendant CLEAR CHANNEL OUTDOOR, INC. ("Defendant or Clear Channel") was the lessee

12  under the Lease.  Typically, Clear Channel owns a billboard, but not the land on which the

13  billboard sits.  Before Clear Channel can operate its billboard, it must have the consent of

14  whomever owns the property rights where the billboard is located ("Property Owner").  That

15  consent usually takes the form of a land lease between a Property Owner and Clear Channel.

16  Land leases for premiere Skyway billboards can achieve up to 65% of net advertising revenue.

17    The Lease, which incepted in 1984, had fallen far behind the gross advertising revenues

18  generated by Skyway billboards.  Pursuant to its terms, Traverso timely terminated the Lease,

19  effective February 28, 2007.  Traverso offered to enter into another land lease with Clear

20  Channel, for an increased amount of rent.  In letters, Clear Channel took the position that the

21  Lease, pursuant to its terms, could not be terminated until 2009.  Holding fast to that position,

22  Clear Channel refused to pay the increased rent, and refused to vacate the premises.  For almost

23  one year, Clear Channel has held over and refuses to relinquish possession of the premises.

24    Clear Channel's conduct placed Plaintiff in the position of having to file an unlawful

25  detainer action.  Traverso has a pending motion for summary adjudication of issues to establish

26  that the Lease terminated February 28, 2007, and that the only issue for trial is damages.  Clear

27  Channel has produced six separate business records, on which Clear Channel employees recorded

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   that the Lease terminated on February 28, 2007, the date indicated by Plaintiff.  When Clear

2   Channel was asked in an interrogatory all facts that support its contention that the Lease did not

3   terminate February 28, 2007, Clear Channel first responded "Not applicable."  After meeting and

4   conferring, Clear Channel responded with a double-negative.  Consequently, although it appears

5   that Clear Channel has conceded that the Lease terminated on February 28, 2007, Clear Channel

6   has refused to provide an unequivocal response and has chosen instead to stand on its ambiguous

7   answer.

8       There are very few independent billboard operators on the Skyway.  In fact, nearly all

9   Skyway billboards are operated by the two billboard giants, Clear Channel and CBS.  Plaintiff

10  does not own any Skyway billboards, and operates only two.  Plaintiff is informed and believes

11  that Clear Channel owns and operates approximately 35 Skyway billboards.  Clear Channel

12  seemingly has unlimited resources to pursue litigation and wear down its individual opponents.

13  Clear Channel is using the cost of meritless litigation against a small operator as unfair leverage

14  to negotiate a low rent.

15  **II.    DISCUSSION**

16      Plaintiff served written discovery on Clear Channel, comprised of requests for production

17  of documents ("RFD") and special interrogatories ("SPROG") on December 18, 2007.  Murai

18  Decl., ¶¶3, 4, Ex. A, B.  The RFD and SPROG that are still in dispute seek documents and

19  information in three categories: (1) the factual basis for Clear Channel's contention that the Lease

20  did not terminate on February 28, 2007; (2) Clear Channel's advertising rates and contracts on all

21  Skyway billboards; and (3) Clear Channel's land leases on those billboards.  McMonigle Decl.,

22  ¶3.  Clear Channel propounded the same discovery on Plaintiff.  *Id*.  In both written responses to

23  discovery and at his deposition, taken after discovery cut-off, Traverso provided clear responses

24  as to the factual basis for his position that the Lease terminated February 28, 2007; he produced

25  all his Skyway advertising rates and contracts, and land leases; and he answered questions on all

26  of these items during his day long deposition.

27      By contrast, Clear Channel still (1) has not made clear its position on the date the Lease

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

*MEMORANDUM OF POINTS AND AUTHORITIES –    - 3 -
Case No. C07-3629 MJJ*

terminated; (2) refuses to produce any Skyway advertising rates or contracts; and (3) has only produced partial information on nine Skyway land leases. McMonigle Decl., ¶4. Clear Channel has produced typed lists of numbers that purport to be gross and net advertising revenues Clear Channel received on 17 Skyway billboards for portions of 2006 and 2007. McMonigle Decl., ¶5, Ex. A. This is inadequate. It allows Clear Channel to cherry-pick 17 out of 35 Skyway billboards, which 17 support Clear Channel's position with respect to advertising revenue and land lease rent; rather than allowing both parties to analyze all the Skyway information.

### A.    The Information Sought Is Relevant

As for the **advertising contracts**, they are the only evidence of the advertisers, the contract term, and the sign size; and the best evidence of gross revenue and net revenue. Fed. R. Evid. 1002. The typed lists of numbers relate to only 17 of Clear Channel's 35 Skyway billboards, and do not contain the advertisers, the contract terms, or the sign sizes. All of this information is necessary to establish a reasonable rent. It is important to know the advertisers to determine if they are national advertisers who pay market rates, or local advertisers who may not. The contract term is important because a long-term buy may account for a lower advertising rate. Whether a Skyway billboard is sold as part of a package is important. Only the advertising contract will show whether a Skyway package deal includes inferior outlying billboards. This is relevant because big sign companies may discount Skyway billboards to sell less desirable inventory at high prices. Further, the typed lists of numbers appear to have errors, and it is unclear how gross and net advertising revenues are to be interpreted. Moreover, the typed lists of numbers are hearsay. Fed. R. Evid. 802.

The relevant time period is 2007-2008, given that the Lease terminated February 28, 2007, and Clear Channel is holding over to this day. The typed lists of numbers only reflect revenues Clear Channel has received. Advertisers are notorious for paying sign companies up to six months late. So, revenues Clear Channel received at the end of 2007 may reflect advertising contracts only through mid 2007. It is critical to have advertising contract information to the present because Clear Channel may have entered into advertising contracts after mid 2007 at

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

higher rates, which goes directly to what constitutes reasonable rent.  In fact, Traverso believes that Clear Channel recently entered into a new advertising contract with General Motors on the Billboard, but Clear Channel refuses to produce its Skyway advertising contracts, including the contract(s) on the Billboard, withholding key evidence in the case.

As for the **advertising rates**, Clear Channel's Skyway advertising rates, which can be found on Clear Channel's rate sheets, show what Clear Channel is charging for Skyway billboards.  What Clear Channel thinks the advertising rates should be is highly relevant information for determining reasonable rent.  Clear Channel has refused to produce its advertising rates.

As for the **land leases**, Clear Channel produced only nine land leases for 35 Skyway billboards, and most of those leases were incomplete.  McMonigle Decl., ¶6.  To prevent Clear Channel from excluding the land leases that do not support its position in this litigation, Clear Channel must produce complete copies of all operative Skyway land leases.

### B.     Clear Channel Concedes the Information Sought Is Relevant

At Traverso's deposition, Clear Channel's counsel quizzed Plaintiff on Skyway **advertising rates**, such as the list price for a Skyway sign, and the information in Skyway advertising contracts, such as the impact of the **contract term** on the advertising revenue that could be commanded.  McMonigle Decl., ¶7, Rough Draft Traverso Depo. Transc., 25:9-23; 38:3-22; 122:16-25; 124:21-125:6; 125:24-126:7, Ex. B.  Clear Channel's counsel also questioned Traverso on the relationship between land lease rent and advertising revenue in **advertising contracts**.  *Id*. at 29:20-30:21.  And, in particular, **"along the Skyway,"** the percentage of advertising revenue **"of any sign"** that a billboard company is paying in rent.  *Id. at* 86:22-87:13.  Clear Channel's counsel said that he was **"going to try to drill into this a little further"** and then asked if Traverso had "any written records reflecting the rent that's being paid" on specific Skyway billboards.  *Id*. at 88:4-22.  Clear Channel's counsel later asked again if Traverso was aware **"of any signs along the Skyway"** for which a billboard company was paying a certain percentage of net advertising revenue in rent.  *Id*. at 153:3-7.  Clear Channel's

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

014965.0004\838845.1

counsel also inquired about the relationship between **sign size**, on the one hand, and land lease

rent and advertising revenue, on the other. *Id.* at 31:11-32:12; 87:8-23; 88:4-15; 129:6-130:8.

Clear Channel's counsel asserted that whether there was an **advertiser** on a sign was "pertinent to

the value of a sign." *Id.* at 37:18-25. Clear Channel's counsel observed the connection between

revenue in **advertising contracts** in 2007, and whether there were any spikes in the billboard

advertising revenue market that year. *Id.* at 41:1-16. Clear Channel's counsel asked Traverso

about **agency commissions** and **net advertising revenue** in relation to advertising contracts. *Id.*

at 38:12-39:25. Clear Channel's counsel cannot argue that Clear Channel's Skyway advertising

rates are irrelevant after asserting that what Traverso was **"advocating for rent"** on his two

Skyway billboards was relevant because "fair market value of the property is directly at issue."

*Id.* at 46:1-8. Clear Channel's counsel also interrogated Traverso on his knowledge of **land lease**

rents of **"any signs" "along the Skyway."** *Id.* at 74:7-77:25. Clear Channel's counsel stated:

"I am trying to get to your knowledge of any signs that are being rented by an owner of property

to a billboard company or someone else at or greater than $30,000 a month along the Skyway."

*Id.* at 77:11-14. Clear Channel's counsel questioned Traverso on his **Skyway inventory and his**

**advertising rates** for his two Skyway billboards. *Id.* at 102:4-111:13. Clear Channel's counsel

questioned Traverso on the **Skyway advertising contracts** produced by Traverso. *Id.* at 111:14-

130:8. When asked whether this line of questioning was relevant, Clear Channel's counsel

affirmed that it was. *Id.* at 86:22-87:13; 118:5-19.

There is no dispute that the discovery Traverso seeks is relevant, as explained above.

First, Clear Channel sought, and received, this information from Plaintiff. Second, to establish

reasonable rent, the parties need to analyze Skyway billboard advertising rates and contracts, and

land leases. This is information that Clear Channel has, and will use to try to prove its case

against Traverso, but which information Clear Channel refuses to provide to Plaintiff.

### C.    Clear Channel Has Not Conducted Discovery Or This Lawsuit In Good Faith

Throughout the discovery process, Clear Channel has behaved like a bully. Initially,

Clear Channel refused to produce documents or substantively respond to 6 of 9 of Plaintiff's

014965.0004\838845.1

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   RFDs and 7 of 9 of Plaintiff's SPROGs.  Murai Decl., ¶¶5, 6, Ex. C, D.  When Plaintiff attempted

2   to meet and confer, Clear Channel refused to meet and confer with Plaintiff until Clear Channel

3   had received Plaintiff's discovery responses, even though Plaintiff had propounded discovery

4   first, and Clear Channel's responses were overdue.  Murai Decl., Ex. I.

5          When Clear Channel finally agreed to meet and confer, it agreed to produce documents

6   and supplement its interrogatory responses to most of the RFDs and SPROGs.  Murai Decl., ¶12,

7   Ex. J.  Clear Channel's sudden change in position highlights the lack of merit of its objections.

8   However, Clear Channel did not agree to produce documents or to supplement its interrogatory

9   responses until shortly before the deadline to file a motion to compel.  *Id.*  Despite this, Clear

10  Channel would not agree to extend the deadline to file a motion to compel.  *Id.*  When Clear

11  Channel did produce documents, it did not produce the documents it agreed to produce, and

12  continues to refuse to produce its Skyway advertising rates and contracts, and complete copies of

13  all its Skyway land leases.  Murai Decl., ¶14.

14         And, at the time of this motion, Clear Channel still has not provided an adequate

15  supplemental response to a key interrogatory in this case.  Does Clear Channel dispute that the

16  Lease terminated February 28, 2007?  If not, why did Clear Channel dispute that lease

17  termination date for nearly one year, denying Plaintiff increased rent and causing Plaintiff to incur

18  substantial attorney and expert fees and costs?  Plaintiff, on the other hand, has produced all

19  relevant documents, served substantive responses to interrogatories, and been deposed for a day.

20         Clear Channel also has refused to produce two individuals it has identified as its persons

21  most knowledgeable on Skyway land leases and advertising contracts – William Hooper and

22  Patrick Powers.  Messrs. Hooper and Powers were identified for the first time in Clear Channel's

23  discovery responses as Clear Channel's persons most knowledgeable regarding Skyway land

24  leases.  Murai Decl., ¶6, Ex. D (See Response to SPROG No. 2).  These individuals were not

25  identified as having such knowledge in Clear Channel's initial disclosures.  Plaintiff served

26  deposition notices three business days after having received Clear Channel's responses and set

27  their depositions within the deadline to complete discovery, although admittedly on short notice,

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1  i.e., two days.  Murai Decl., ¶7, Ex. E.

2      Further, it was not until February 7, 2008, after lots of time and energy meeting and

3  conferring, after discovery cut-off, that Clear Channel revealed that Hooper also was the person

4  most knowledgeable on Skyway advertising contracts.  Murai Decl., ¶13, Ex. K.  Nevertheless,

5  Clear Channel has refused to make Messrs. Hooper and Powers available for deposition, despite

6  the fact Plaintiff has made himself available for deposition and in fact was deposed by Clear

7  Channel after discovery cut-off.  Murai Decl., ¶¶8-11, Ex. F-I.

8      In short, Plaintiff has produced documents, has substantively answered interrogatories, has

9  made himself available for deposition, and has in fact been deposed by Clear Channel.

10  Defendant, on the other hand, has not produced relevant documents, has not served meaningful

11  interrogatory responses, and has refused to produce any of its employees for deposition.  Plaintiff

12  respectfully requests that the Court direct Clear Channel to serve further responses to the RFDs

13  and SPROGs and to produce Messrs. Hooper and Powers for deposition.

14  **III.    DISCOVERY SOUGHT**

15      **A.    Requests for Production of Documents**

16      Plaintiff requests an order that Clear Channel provide further responses to RFD Nos. 4, 5,

17  and 9.

18      RFD No. 4 requests Clear Channel's complete set of operative land leases for all of its

19  Skyway billboards.  RFD No. 5 requests Clear Channel's advertising rates and contracts for its

20  Skyway billboards.   Traverso has limited this request to the time period January 1, 2007-

21  December 31, 2008.  RFD No. 9 requests all Clear Channel's advertising rates and contracts on

22  the Billboard, and all documents relating thereto.  Again, Traverso has limited this request to the

23  time period January 1, 2007-December 31, 2008.

24      As discussed, one of the measures of damages in this action will be the reasonable

25  holdover rent, for one year or more, on the Billboard.  The parties need relevant information.  As

26  shown above, Clear Channel's Skyway advertising rates and contracts, as well as its Skyway land

27  leases, are just that information.  Thus, the documents requested are relevant and should be

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1    produced.  Because Clear Channel has the information and simply refuses to produce it,

2    production must be compelled by the Court.

3        **B.    Special Interrogatories**

4        Plaintiff further requests that Clear Channel provide further responses to SPROG NOs. 4,

5    5, 6, 7, 8, and 9.

6        SPROG No. 4 requests information regarding amounts paid by Clear Channel for its lease

7    and/or license of Skyway billboards.  SPROG No. 5 requests information regarding amounts

8    charged by Clear Channel for advertising on Skyway billboards.  SPROG No. 8 requests

9    information regarding amounts paid to Clear Channel for advertising on Skyway billboards.

10   Again, the reasonable rent for the holdover period on the Billboard will be determined by

11   analyzing rents paid by Clear Channel for Skyway billboards as well as amounts paid to Clear

12   Channel by advertisers.  This information is relevant and should be disclosed.

13       SPROG No. 6 requests that Clear Channel identify the third parties with whom it has

14   advertising contracts for the Billboard.  SPROG No. 7 requests that Clear Channel identify the

15   time periods in which third parties have had advertising contracts on the Billboard.  Both of these

16   interrogatories relate to third-party advertising contracts for use of the Billboard.  This

17   information is relevant to the issue of damages and should be disclosed.

18       SPROG No. 9 requests that Clear Channel state all facts in support of its contention that

19   the Lease did not terminate on February 28, 2007.  Clear Channel answered "Not applicable."

20   Murai Decl., ¶13, Ex. K.  During the meet and confer process, Clear Channel's counsel stated that

21   Clear Channel was conceding that the Lease terminated on February 28, 2007.  Murai Decl., ¶14.

22   This was a significant concession.  Indeed, it meant that Plaintiff was entitled to possession,

23   leaving damages as the only remaining issue to be adjudicated.

24       Plaintiff has filed a motion for summary adjudication on the issue of the date the Lease

25   terminated.  Plaintiff's concession should have made hearing that motion unnecessary.  Traverso

26   asked that Clear Channel provide a further response to interrogatory no. 9, conceding that the

27   Lease had terminated February 28, 2007, and that the only remaining issue for trial was damages.

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   Instead, Clear Channel's supplemental response states:  "Clear Channel does not contend

2   that the LEASE did not terminate on February 28, 2007."  This is a double-negative, and Traverso

3   is left to guess what is meant by Clear Channel's response.  Murai Decl., ¶14.  Consequently,

4   Traverso's summary adjudication motion remains on file, even though discovery shows there

5   never was any legal or factual basis for Clear Channel's theory that the Lease continued into

6   2009.  Thus, there never was any legal or factual basis for Clear Channel to hold over and to

7   refuse for almost one year, and continuing each day forward, to pay Plaintiff increased rent.

8       If Clear Channel has no factual or legal basis for holding over, then Plaintiff is entitled to

9   Rule 11 sanctions, including all attorney and expert fees and costs incurred to pursue the unlawful

10   detainer complaint.  Under these circumstances, Traverso arguably is entitled to the rental amount

11   he set.  At a minimum, Traverso is entitled to establish his damages based on a reasonable rent for

12   the holdover period.

13   **C.    Depositions**

14       Finally, Plaintiff requests an order that Clear Channel produce William Hooper and

15   Patrick Powers for deposition.  Messrs. Hooper and Powers were identified in Clear Channel's

16   responses to SPROG No. 2 as its persons most knowledgeable regarding Clear Channel's Skyway

17   land leases.  Messrs. Hooper and Powers were not identified as having such information in Clear

18   Channel's initial disclosures.  Plaintiff served notice of their depositions by personal service three

19   business days after having received Clear Channel's responses to discovery, and set their

20   depositions within the deadline to complete discovery, albeit with only two days' notice.  Plaintiff

21   further agreed to take their depositions after discovery cut-off.  This was the same agreement

22   made with respect to Plaintiff's deposition (i.e., Plaintiff agreed to, and did, make himself

23   available after discovery cut-off).  Nevertheless, Clear Channel has refused to produce Messrs.

24   Hooper or Powers.  Further, it was not until after discovery cut-off, on February 7, 2008, after

25   extensive meeting and conferring, that Clear Channel revealed that Mr. Hooper also is the person

26   most knowledgeable about Skyway advertising contracts.  Traverso respectfully requests that the

27   Court allow both sides to take party depositions, even though both parties' depositions will have

28

1    taken place after discovery cut-off.

2    **IV.    CONCLUSION**

3          For the foregoing reasons, Plaintiff respectfully requests that Clear Channel be ordered to

4    provide further responses to Plaintiff's written discovery and to produce Messrs. Hooper and

5    Powers for deposition.

6    Dated: February 11, 2008                    **WENDEL, ROSEN, BLACK & DEAN LLP**

7

8                                    By:      /s/ Richard A. Sipos
9                                          Richard A. Sipos
                                           Attorneys for Plaintiff
10                                          RICHARD TRAVERSO

11

12    DOCS\S0138-713\545200.V1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*MEMORANDUM OF POINTS AND AUTHORITIES –*        - 11 -
                                        *Case No. C07-3629 MJJ*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036